\*STATE OF IOWA v. V. A. WHEELOCK, Appellant.

**Police Power:** VENDOR OF DRUGS.  Section 10, chapter 75, of the Acts
of the Eighteenth General Assembly, as amended by section 2, chap-
ter 137, of the Acts of the Nineteenth General Assembly, and section
3, chapter 83, of the Acts of the Twenty-first General Assembly,
imposes a license upon such itinerant vendors of drugs, etc., who
by writings or other method publicly profess to cure or treat dis-
ease by any drug, etc.  The defendant while in Iowa as the agent
of a citizen of Minnesota, received from his principal an *original*
package of medicine.  He distributed circulars issued by the
principal which represented the medicine to be a cure for certain
diseases, and the agent stated that the medicine sold by him was
as stated in the circular.  For selling such original package in
Iowa without the license prescribed by Iowa law he was con-
victed and fined.  *Held*, said Iowa statutes are not in conflict with
section 8, article 1, Constitution of the United States, which del-
egates to Congress the power to regulate commerce among the
several states, but are a valid exercise of the police power
intended to restrain the sale of nostrums by itinerants who pro-
fess knowledge of the art of healing in order to make sales.
*Bowman v. R'y*, 125 U. S. 465, and *Leisy v. Hardin*, 135 U. S. 100,
*distinguished.*

*Appeal from Shelby District Court.*—HON. A. B. THOR-
NELL, Judge.

THURSDAY, OCTOBER 10, 1895.

The defendant was convicted of the crime of being
an itinerant vendor of drugs and nostrums and pub-
licly professing to cure diseases and injuries without
a license.  From the judgment, which imposes a fine
of one hundred dollars, he appeals.—*Affirmed.*

*Pfau & Young* and *Whitney Bros.* for appellant.

The powers vested in Congress to regulate com-
merce with foreign nations, and among the several

\*See note on the limit of amounts of license fees, 30 L R. A. 429.
VOL. 95 Ia—37

states, and with the Indian tribes is a power to prescribe the rule by which that commerce is to be governed, and is a power complete in itself, acknowledging no limitations other than those prescribed in the Constitution.

*Leisy v. Hardin,* 135 U. S. 100, 34 L. ed. 128, 3 Inters. Com. Rep. 36; *Gibbons v. Ogden,* 22 U. S. 9 Wheat. 1, 6 L. ed. 23; *Brown v. Maryland,* 25 U. S. 12 Wheat. 419, 6 L. ed. 678; *Bowman v. Chicago & N. W. R. Co.* 125 U. S. 465, 31 L. ed. 700, 1 Inters. Com. Rep. 823.

While, by virtue of its jurisdiction over persons and property within its limits, a state may provide for the security of the lives, limbs, health and comfort of persons and the protection of property so situated, yet a subject-matter which has been confined by the Constitution exclusively to Congress is not within the jurisdiction of the police power of the state, unless placed there by congressional action.

*Henderson v. Wickham,* 92 U. S. 259, 23 L. ed. 543; *Hannibal & St. J. R. Co. v. Husen,* 95 U. S. 465, 24 L. ed. 527; *Walling v. Michigan,* 116 U. S. 446, 29 L. ed. 691; *Robbins v. Shelby County Tax. Dist.* 120 U. S. 489, 30 L. ed. 694; *Leisy v. Hardin, supra.*

Whenever a particular power of the general government is one which must necessarily be exercised by it, and Congress remains silent, this is not only not a concession that the powers reserved by the states may be exerted as if a specific power had not been elsewhere reposed, but, on the contrary, the only legitimate conclusion is that the general government intended that the power should not be affirmatively exercised.

*Mobile County v. Kimball,* 102 U. S. 691, 26 L. ed. 238; *Brown v. Houston,* 114 U. S. 622, 29 L. ed. 257; *Wabash, St. L. & P. R. Co. v. Illinois,* 118 U. S. 557, 30 L. ed. 244; *Robbins v. Shelby County Tax. Dist.* 120 U. S. 489, 30 L. ed. 694; *Leisy v. Hardin,* 135 U. S. 100, 34 L. ed. 128, 3 Inters. Com. Rep. 36.

The license is in effect a tax upon the goods shipped and sold by the licensee, upon the property of a nonresident while in the hands of the owner, and, before the same has become a part of the mass of the property of the state seeking to tax it, is a measure regulating interstate commerce, and therefore void.

*Brown v. Maryland*, 25 U. S. 12 Wheat. 419, 6 L. ed. 678; *Leloup v. Port of Mobile*, 127 U. S. 640, 32 L. ed. 311, 2 Inters. Com. Rep. 134; *Robbins v. Shelby County Tax. Dist.* and *Wabash, St. L. & P. R. Co. v. Illinois, supra; Cook v. Pennsylvania*, 97 U. S. 566, 24 L. ed. 1015; *State Freight Tax Case*, 82 U. S. 15 Wall. 232, 21 L. ed. 146; *Pensacola Teleg. Co. v. Western U. Teleg. Co.* 96 U. S. 1, 24 L. ed. 708; *Gloucester Ferry Co. v. Pennsylvania*, 114 U. S. 196, 29 L. ed. 158; *Wabash, St. L. & P. R. Co. v. Illinois, supra; Ratterman v. Western U. Teleg. Co.* 127 U. S. 411, 32 L. ed. 229, 2 Inters. Com. Rep. 59.

The smallness of the license or tax does not eliminate its regulative character.

*Brown v. Maryland*, 25 U. S. 12 Wheat. 439, 6 L. ed. 685; *State Freight Tax Case*, 82 U. S. 232, 21 L. ed. 146.

The purpose for which the license for selling proprietary medicine in the state of Iowa is exacted does not render the statute constitutional if in effect it lays a burden upon interstate commerce.

*State Freight Tax Case, supra.*

Because the statute in question is indiscriminative it is not for that reason constitutional, in so far as it applies to the facts in the case at bar.

*Bowman v. Chicago & N. W. R. Co.* 125 U. S. 507, 31 L. ed. 714, 1 Inters. Com. Rep. 825; *Robbins v. Shelby County Tax. Dist.* 120 U. S. 489, 30 L. ed. 694; *State Freight Tax Case, supra.*

The right to tax applies equally as well to the principal as to agent.

*Robbins v. Shelby County Tax. Dist. supra.*

Interstate commerce cannot be interdicted or regulated under cover of police power.

*Leisy v. Hardin,* 135 U. S. 100, 34 L. ed. 128, 3 Inters. Com. Rep. 36; *Cooley v. Port Wardens,* 53 U. S. 12 How. 299, 13 L. ed. 996; *Robbins v. Shelby County Tax. Dist.* and *Bowman v. Chicago & N. W. R. Co. supra.*

*Milton Remley* and *Thos. A. Cheshire* for the state.

The state has power to levy a tax upon occupations.

*State v. Bair* (Iowa) 60 N. W. Rep. 486; *Howe Mach. Co. v. Gage,* 100 U. S. 676, 25 L. ed. 754; *Hinson v. Lott,* 75 U. S. 8 Wall. 148, 19 L. ed. 387; *Woodruff v. Parham,* 75 U. S. 8 Wall. 123, 19 L. ed. 382; *Nathan v. Louisiana,* 49 U. S. 8 How. 73, 12 L. ed. 992; *Brown v. Maryland,* 25 U. S. 12 Wheat. 419, 6 L. ed. 678; *Ward v. Maryland,* 79 U. S. 12 Wall. 418, 20 L. ed. 449; *Kirtland v. Hotchkiss,* 100 U. S. 499, 25 L. ed. 562; *Wiggins Ferry Co. v. East St. Louis,* 102 Ill. 574; *Corson v. State,* 57 Md. 266; *Marshalltown v. Blum,* 58 Iowa, 184, 43 Am. Rep. 115; *Pacific Junction v. Dyer,* 64 Iowa, 38.

The statute under which defendant was indicted does not discriminate against nonresidents.

*State v. Gouss,* 85 Iowa, 21; *State v. Parsons,* 124 Mo. 436.

The law in question is within the police power of the state as well as the taxing power.

*Thorpe v. Rutland & B. R. Co.* 27 Vt. 140, 62 Am. Dec. 625; *Com. v. Alger,* 7 Cush. 84; *Slaughter-House Cases,* 83 U. S. 16 Wall. 36, 21 L. ed. 394; *Council Bluffs v. Kansas City, St. J. & C. B. R. Co.* 45 Iowa, 342, 24 Am. Rep. 773; Tiedeman, Pol. Powers, section 85; *Gibbons v. Ogden,* 22 U. S. 9 Wheat. 1, 6 L. ed. 23.

After the box, or barrel, or crate in which goods are shipped is opened, the articles contained therein, because done up in small boxes, bottles, or cans, cannot be called and treated as original packages.

*Keith v. State*, 91 Ala. 2, 10 L. R. A. 430; *State v. Parsons, supra; Com. v. Schollenberger*, 156 Pa. 201, 22 L. R. A. 155, 4 Inters. Com. Rep. 488; *In re Harmon*, 43 Fed. Rep. .372; *Smith v. State*, 54 Ark. 248; *State v. Chapman*, 1 S. D. 414, 10 L. R. A. 432.

Robinson, J.—The conviction of the defendant was had under section 10 of chapter 75 of the Acts of the Eighteenth General Assembly, as amended by section 2 of chapter 137 of the Acts of the Nineteenth General Assembly and section 3 of chapter 83 of the Acts of the Twenty-first General Assembly, which contains the following: "Any itinerant vendor of any drug, nostrum, ointment or appliance of any kind intended for the treatment of diseases or injury, who shall by writing or printing or by any other method publicly profess to cure or treat diseases or injury or deformity by any drug, nostrum, or manipulation, or other expedient shall pay a license of one hundred dollars per annum, to be paid to the treasurer of the commission of pharmacy. * * * Any person violating this section shall be deemed guilty of a misdemeanor and shall upon conviction pay a fine of not less than one hundred and not more than two hundred dollars." In July, 1894, the defendant was engaged in the business of selling, on commission, proprietary medicines which were manufactured in the state of Minnesota by J. R. Watkins, and were owned by him until sold. He was a resident of Minnesota, and the medicines were placed in glass bottles, securely corked, sealed, and capped, and were brought into the state, and sold in the original packages in which they were placed by the manufacturer. The medicines as prepared, and as received in this state by the defendant, were a legitimate subject of commerce, and were not injurious to the public health. They were transported by Watkins from the place where they were manufactured to Harlan, in this state,

'where they were received by the defendant, and there offered for sale. In making the sales he traveled from place to place with a team and wagon, and, while so engaged, sold one of the packages to one M. B. Howe, in Shelby county, in the condition in which it was sent from Minnesota. He did not at that or any other time represent himself to be a physician, nor assume to determine the ailments of the people; but he distributed printed circulars of Watkins', which represented the medicines to be a cure for certain diseases named in the circulars, and the defendant represented that the medicine sold by him was as stated in the circular. At the time the business described was carried on, and the sale specified was made, the defendant did not have a license as contemplated by the statute, nor was he a physician or registered pharmacist. At that time, Howe was a resident of this state.

The appellant contends that the acts under which he was convicted are repugnant to that part of section 8 of article 1 of the constitution of the United States which provides that the congress shall have power to regulate commerce among the several states, and the only question we are required to determine is whether the claim thus made is well founded. The record clearly shows that it must be regarded, for the purposes of this case, as conceded that the defendant was an itinerant vendor of drugs and nostrums, without a license, within the meaning of the statutes of this state which we have set out, and that the medicines he sold were in the original packages in which they were shipped into this state. It is true that the power vested in congress to regulate commerce among the several states is a power complete in itself to prescribe the rules by which that commerce is to be governed; that it is coextensive with the subject on which it acts, and cannot be stopped at the external boundary of a state, but enters it, and is capable of

authorizing a disposition of articles of commerce so that they become a part of the common mass of the property within the state. *Leisy v. Hardin,* 135 U. S. 100 (10 Sup. Ct. Rep. 681). But it has been held that state laws which do not discriminate between residents and products of a state and those of another state; which are not designed to interfere in any manner with interstate commerce, as those which are in the nature of a simple tax upon sales of merchandise, imposed alike upon all persons, whether residents or nonresidents of the state,—are not repugnant to the constitutional provision in question. Thus, in *Hinson v. Lott,* 8 Wall. 148, a statute which imposed a tax of fifty cents per gallon on each gallon of spiritous liquors offered for sale in the state, to be paid by the dealer introducing it, was sustained, it appearing that a like tax on such liquors produced in the state was exacted. In *Woodruff v. Parham,* 8 Wall. 123, a tax imposed by the city of Mobile on auction sales and sales of merchandise was sustained as to sales of property brought from other states, and sold at wholesale in unbroken packages. In *Machine Co. v. Gage,* 100 U. S. 676, a statute of the state of Missouri requiring all peddlers of sewing machines, without regard to the place of growth or production of material or manufacture, to pay a tax, was sustained as against a peddler who sold machines made in Connecticut. In *Webber v. Virginia,* 103 U. S. 344, it was said that there is no objection to state legislation requiring a license for the sale of sewing machines, by reason of the grant of letters patent for the invention, when there is no discrimination against nonresidents or their agents. In *Brown v. Houston,* 114 U. S. 622 (5 Sup. Ct. Rep. 1091), the power of a state to levy a tax on coal mined outside the state, and brought within it to be there sold, was affirmed. In *Plumley v. Com.,* 155 U. S. 461 (15 Sup. Ct. Rep. 154), a statute of the state of Massachusetts which prohibited the manufacture and

sale of imitation butter, in imitation of yellow butter produced from pure, unadulterated milk, or cream of such milk, was sustained, and held to apply to the prohibited article when brought for sale from another state, where it was manufactured. Some of these cases arose under the provision of the federal constitution which forbids states, without the consent of congress, to lay any imposts or duties on imports or exports, but all are applicable to the facts in this case. Some of the cited cases recognize the rule that state laws of the general nature of those approved are invalid so far as they discriminate in favor of the residents and products of the state, and against the residents and products of other states. There is no discrimination in the statutes of this state under consideration. They apply alike to itinerant vendors of drugs and nostrums produced in this state, and to those which come from without it; to residents and nonresidents of the state; to those who sell their own wares, and to those who act for others. The primary object of the acts is not to derive a revenue for the use of the state, but in large part, at least, to protect its citizens against solicitations and harmful practices of irresponsible and unknown traveling vendors of drugs and other articles intended for the treatment of diseases or injury, who, in carrying on their business, publicly profess to cure or treat diseases, injuries, or deformities, and thus promote the sale of their wares to the credulous. The prohibited act may be committed without any actual sale. *State v. Bair*, 92 Iowa, 28 | 60 N. W. Rep. 486|.

That the enactment of the laws in question was within the police power of the state is affirmed in principle by numerous authorities, some of which are of long standing, and cannot now be successfully questioned. *In Re Rahrer*, 140 U. S. 545 (11 Sup. Ct. Rep. 865), it was said that: "The power of the state to impose restraints and burdens upon persons and property, in

conservation and promotion of the public health, good order, and prosperity, is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the constitution of the United States, and essentially exclusive. And this court has uniformly recognized state legislation, legitimately for police purposes, as not, in the sense of the constitution, necessarily infringing upon any right which has been confided expressly, or by implication, to the national government." The cases of *Bowman v. Railway Co.*, 125 U. S. 465 (8 Sup. Ct. Rep. 689, 1062), and *Leisy v. Hardin*, 135 U. S. 100 (10 Sup. Ct. Rep. 681), upon which the defendant relies in this case, were considered, and the fact noted that the laws on which they were based "inhibited the receipt of an imported commodity or its disposition before it had ceased to be an article of trade between one state and another, or another country and this." In *Plumley v. Com, supra*, the case of *Leisy v. Hardin* was again considered, and held not to be an authority for the claim that oleomargarine—a recognized article of commerce—may be introduced into a state, and there sold in original packages, without any restriction being imposed by the state upon such sale. The recent case of *Emert v. State* (15 Sup. Ct. Rep. 367), fully sustains the conclusion we now reach. That case involved the validity of a statute of the state of Missouri which provided that no person should deal as a peddler without a license, as applied to a peddler of sewing machines manufactured in another state; and the review of the authorities, and the interpretation placed upon the constitutional provision involved, are in point.

The amount of the license fee required by the statutes under consideration is not excessive, and the regulations adopted by them are reasonable. The sale of drugs, nostrums, and other articles manufactured in another state, and brought into this state, whether

brought into this state in original packages or other- wise, is not prohibited; but such medicines may be brought into the state, and sold freely. Their importa- tion and sale are not in any manner prohibited. But if its owner select as its agent an itinerant, who, to promote sales, publicly professes to cure and treat dis- eases, injuries, and deformities, it is proper that some evidence and guaranty of his responsibility be required. It was said in *Brown v. Maryland*, 12 Wheat. 443, that this right of sale may very well be annexed to importa- tion, without annexing to it, also, the privilege of using the officers licensed by the state to make sales in a peculiar way." So it may be said in this case that the right to sell, in original packages, medi- cines brought into this state from another, does not include the right to have it sold by an unlicensed itiner- ant, who, to make sales, professes knowledge of the art of healing. The statutes which apply to such sales are not, in any sense, regulations of interstate commerce, but a reasonable exercise of the police power of the state, which may be applied as well to articles of inter- state commerce in the hands of the vendor, and offered for sale in the original packages, as to articles produced within the state. We conclude that the judgment of the district court is right, and it is *affirmed*.