Dale **ANDERSON** et al., Appellants,

v.

**CITY OF CEDAR RAPIDS, Iowa, and Edward F. Winter, Building Official of the City of Cedar Rapids, Iowa, Appellees,**

Louis **Fellman** and Edward D. **Broderick,** Intervenors-Appellees.

No. 53338.

Supreme Court of Iowa.

June 10, 1969.

James C. Nemmers, of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

David F. McGuire, Cedar Rapids, for appellees.

Donald T. Hines, of Sargent, Spangler, Hines & Pence, and Harry E. Wilmarth, of Shuttleworth & Ingersoll Cedar Rapids, for intervenors-appellees.

RAWLINGS, Justice.

By action in equity plaintiffs challenge validity of an amendatory city zoning ordinance. Trial to the court resulted in a decree denying relief prayed and they appeal. We affirm.

In 1955 Cedar Rapids adopted a comprehensive zoning plan. Section 414.3, Code, 1966.

The property here involved was thereby classified R–2 Residential, as was some of the surrounding land.

Other nearby and adjacent realty was at the same time zoned B–1 or Commercial.

About November 1, 1967, the tract here concerned was zoned B–1 Neighborhood Shopping District by amendment to the aforesaid comprehensive plan.

Briefly stated, propositions asserted by plaintiffs on appeal are, trial court erred in upholding the challenged ordinance on the basis a fair difference of opinion exists as to whether it is, (1) unreasonable, discriminatory, arbitrary, or capricious; (2) in accord with the city's comprehensive plan; and (3) related to health, safety, morals or general welfare of the community.

These assignments are so interrelated as to dictate they be considered accordingly.

Among exhibits certified to us is a plat, here reproduced to aid in visualizing the area involved.

Diagonal lines denote the rezoned parcel.

I. As a case is heard in the trial court it is generally so considered on appeal. Buda v. Fulton, Iowa, 157 N.W.2d 336, 338. Resultantly our review is de novo. Rule 334, Rules of Civil Procedure.

■ II. We have repeatedly held zoning is an exercise of police powers delegated by the state to municipalities, and to be strictly construed. See Plaza Recreational Center v. City of Sioux City, 253 Iowa 246, 253, 111 N.W.2d 758, and Livingston v. Davis, 243 Iowa 21, 26, 50 N.W.2d 592, 27 A.L.R.2d 1237. See also McQuillin, Municipal Corporations, 1965 Rev. Vol. 8, section 25.72, page 191.

■ However, in the enactment of such ordinances, including amendments thereto, a city or town exercises vested legislative powers attended by a strong presumption of validity, which means if facially valid, and reasonableness of the enactment is fairly debatable, it must be allowed to stand. Code section 366.1; Smith v. City of Fort Dodge, Iowa, 160 N.W.2d 492, 495; Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 1318, 78 N.W. 2d 843, 58 A.L.R.2d 1304; Brackett v. City of Des Moines, 246 Iowa 249, 260, 67 N. W.2d 542; Keller v. City of Council Bluffs, 246 Iowa 202, 207, 66 N.W.2d 113, 51 A.L.R.2d 251; Anderson v. Jester, 206 Iowa 452, 460, 221 N.W. 354; 101 C.J.S. Zoning § 102, page 857; 58 Am.Jur., Zoning, section 16, page 949; McQuillin, Municipal Corporations, 1965 Rev. Vol. 8, sections 25.52, page 130, and 25.60, page 148; and Rhyne on Municipal Law, sections 32.-3, page 817, and 32.4, page 828.

■ Stated otherwise, courts will not substitute their judgment as to wisdom or propriety of action by a city or town council, acting reasonably within the scope of its authorized police power, in the enactment of ordinances establishing or revising municipal zones. Brackett v. City of Des Moines, supra; 101 C.J.S. Zoning § 324, page 1121; 58 Am.Jur., Zoning, section 23, page 954; and Rhyne on Municipal Law, section 32.4, pages 828, 829–830.

Furthermore, we said in Plaza Recreational Center v. City of Sioux City, supra, loc. cit., 253 Iowa 253, 111 N.W.2d 763: "The test of whether a zoning ordinance is arbitrary and unreasonable is whether the means employed in the attempted exercise of the police power have any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values. (Authorities cited)."

■ More recently this court held, a zoning ordinance is generally sustained as a valid exercise of police power in the interest of public peace, order, morals, health, safety, convenience, and the general welfare of a community, the prime consideration being its general purpose, not the hardship of individual cases. Jersild v. Sarcone, 260 Iowa 288, 149 N.W.2d 179, 183.

Also, in the Plaza Recreational Center case, supra, 253 Iowa at 252, 111 N.W.2d at 762, is this pertinent statement: "Generally speaking, whether the ordinance involved exceeded the council's authority, or whether it was unconstitutional as being in conflict with the due process or equal protection clauses of the state or federal constitution, *the burden to prove the proviso unreasonable, arbitrary, capricious or discriminatory, is upon the one asserting the invalidity.* Hermann v. City of Des Moines, 250 Iowa 1281, 97 N.W.2d 893, and citations. The rule is well settled that when constitutional questions are raised all reasonable intendments must be indulged in favor of the validity of the enactment. We have also constantly held a classification or regulation of the use of property within the municipality will not be held arbitrary unless clearly so, and that when the issue as to whether it was an unreasonable or unequal exercise of power is fairly debatable, courts will not substitute their judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. (Authorities cited)." (Emphasis supplied).

And in McQuillin, Municipal Corporations, 1965 Rev. Vol. 8A, section 25.296, page 353, is found this comment: "The rule that the burden of proof is on one as-

serting the unreasonableness, invalidity or unconstitutionality of an ordinance is applicable with respect to zoning ordinances and amendments thereto. In other words, unless a zoning ordinance is invalid on its face, the burden of alleging and proving facts to support the claim of its invalidity is on the party asserting it."

■ Finally, on the matter of fundamental precepts here applicable it must be understood zoning is not static, any existing restrictions being always subject to reasonable revisions with changing community conditions and needs as they appear. Brackett v. City of Des Moines, 246 Iowa 249, 256, 67 N.W.2d 542; Anderson v. Jester, 206 Iowa 452, 457, 221 N.W. 354; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1103–1104, 184 N.W. 823, 188 N.W. 921, 23 A.L.R. 1322; 101 C.J.S. Zoning § 86, page 837; and 58 Am.Jur., Zoning, section 169, page 1032.

III. Looking to the physical conditions and uses of land in the subject area, an examination of the plat reproduced above discloses the rezoned tract is bounded by Mt. Vernon Road on the north; 36th St. S.E. on the east; private commercial property on the west; and residential on the south.

Additionally, the record reveals a business establishment is located at each corner of the intersection of 36th St. S.E., and Mt. Vernon Road, to-wit: drug store, professional building, car wash, and service station.

The commercial tract, west of and adjacent to the subject rezoned land, has for years been occupied by a small neighborhood grocery store. This and the questioned shopping center form a contiguous rectangular area consisting of about 3.4 acres.

Since adoption of the comprehensive or master plan in 1955, noticeable changes have taken place in the southeasterly part of Cedar Rapids. As a result of relatively recent migrations, territory located within existing boundaries, once denominated agricultural, has become residential. Concurrently the residential population in that area south and east of the subject rezoned tract has increased substantially. Mt. Vernon Road has been widened from a two lane highway to a four lane heavily traveled thoroughfare, and 34th St. S.E. remains one of the city's main north-south arterial avenues. One hundred sixty off-street parking stalls are now provided in the combined commercial properties located south and east of these two intersecting streets, with ingress and egress limited to the two adjacent east-west roads.

Incidentally, population demands have compelled some communities to acquire more land by annexation. See City of Bettendorf v. Abeln, Iowa, 154 N.W.2d 836.

■ In the face of such apparent conditions, it is not only proper but highly essential that our municipal officials periodically review and update zoning regulations. Welfare of the people, present and future, will not permit adoption of a passive attitude in these matters.

■ Moreover, common experience discloses highly concentrated stores and shops, catering to public needs, are often a convenience, if not a necessity, in or near populous residential areas. Municipal planning in that direction cannot ordinarily be held incompatible with any previously enacted comprehensive plan. See Plaza Recreational Center v. City of Sioux City, 253 Iowa 246, 257–258, 111 N.W.2d 758.

With regard to the matter of zoning as related to variant trends in burghal living habits this court said, in City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1103, 184 N.W. 823, 826, 188 N.W. 921, 23 A.L.R. 1322, 1328: "With the changing conditions necessarily attendant upon the growth and density of population and the ceaseless changes taking place in method and manner of carrying on the

multiplying lines of human industry, the greater becomes the demand upon that reserve element of sovereignty which we call the police power for such reasonable supervision and regulation as the state may impose, to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others. (Authorities cited). Such duty, even though it involves restrictions upon the so-called natural rights of every individual, is the first and most imperative obligation entering into what we call the social compact. Without it there can be no such thing as organized society or civilized government." See also Rhyne on Municipal Law, section 32.3, pages 816, 821–823.

IV. In keeping with the urbanization of once sparsely populated areas, retail business methods have also changed. As stated by an editor's note in 76 A.L.R.2d 1173: "The trend of recent years to suburban living has brought about a greater use of the automobile and the need for more parking facilities in the shopping habits of a great number of people and has brought into existence a new category of business district different in substantial respects from other groupings of retail establishments. This new category has been labeled a 'shopping center' and is particularly characterized by off-street parking facilities and a uniform plan or scheme of development." See also 101 C.J.S. Zoning § 99, page 855.

■ However, this does not mean mutations in living and business habits alone provide an adequate basis for indiscriminate municipal establishment of commercial districts or shopping centers in residential areas, absent any benefit to the health, safety, morals or general welfare of the community. See in this regard Code section 414.3; Hermann v. City of Des Moines, 250 Iowa 1281, 1289–1290, 97 N.W.2d 893; 101 C.J.S. Zoning § 84, page 835; 58 Am.Jur., Zoning, section 21, page 953; and McQuillin, Municipal Corpora-

tions, 1965 Rev. Vol. 8, section 25.115, pages 311–314.

■ But that situation is not present in the case at bar. Here the rezoned property is adjacent to an existing commercial district. A uniform development plan to improve the property by permitting establishment of a shopping center, with controlled traffic access and off-street parking, was duly approved by the city authorities. As previously indicated the now constructed center provides, among other things, a drive-in banking office. It is contemplated use of this and other available facilities by those living in the vicinity will lessen traffic congestion in the central business district. Other benefits to the people may reasonably be expected to flow from establishment of the subject shopping district.

V. Even so, plaintiffs argue there are other more suitable locations available. We do not propose to engage in any extended exploration of that subject.

As heretofore revealed courts will not, in matters of this nature, invade the province of a city or town council. Once it appears a zoning ordinance or amendment thereto is reasonable and inures to the benefit of the people, the judiciary is without authority to dictate choice of location. For reasons previously given that is a matter ordinarily to be resolved by the local legislative body.

Incidentally, plaintiffs belatedly argue aesthetic factors are persuasively involved in the case at bar. We have examined some authorities on that subject and find they accord no significant support to plaintiffs' cause. See in this regard, Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 1318–1320, 78 N.W.2d 843, 58 A.L.R.2d 1304; Anderson v. Jester, 206 Iowa 452, 457, 221 N.W. 354; 101 C.J.S. Zoning § 36, page 743; 58 Am.Jur., Zoning, section 30, page 959; and Rhyne on Municipal Law, section 32.55, pages 970, 971.

VI. It is also contended defendant city here engaged in prohibited spot zoning. We are not so persuaded.

This statement in McQuillin, Municipal Corporations, 1965 Rev. Vol. 8, section 25.-115, pages 309–310, serves to succinctly refute the foregoing claim: "Under the usual provisions of the zoning laws shopping and business centers at convenient locations in residential districts generally are permitted, as is rezoning for this purpose. They do not constitute invalid 'spot' or 'island' zoning where their existence, location and extent are reasonable. Nor are they nuisances per se." With regard hereto see also Keller v. City of Council Bluffs, 246 Iowa 202, 213–214, 66 N.W.2d 113, 51 A. L.R.2d 251; 101 C.J.S. Zoning §§ 91–99, pages 843–855; Rhyne on Municipal Law, section 32.3, pages 816, 825–828; and Annos. 51 A.L.R.2d 263.

VII. We find no merit in the propositions urged by plaintiffs in support of a reversal.

It is evident defendant City of Cedar Rapids acted within the scope of its authorized police power in establishing the controverted shopping center classification. The ordinance is not invalid on its face, and nothing in the record before us discloses any plausible basis upon which to hold the zoning change was arbitrary or unreasonable.

In fact there are cogent circumstances which tend to support the propriety and wisdom of that municipal legislative enactment with which we are here concerned. This being fairly debatable the ordinance must be allowed to stand. Trial court correctly so held.

Costs on this appeal are taxed to plaintiffs.

Affirmed.

All Justices concur.